ALUMINUM COMPANY OF AMERICA, APPELLANT, *v.* KOSYDAR, TAX COMMR., APPELLEE.

(No. 77-1446—Decided June 28, 1978.)

478

Messrs. *Porter, Wright, Morris & Arthur,* Mr. *George
M. Hauswirth* and Mr. *Jon M. Anderson,* for appellant.
Mr. *William J. Brown,* attorney general, and Mr. *John
C. Duffy, Jr.,* for appellee.

*Per Curiam.* The revisory jurisdiction of this court
is limited to determining whether the decision of the board
is reasonable and lawful. R. C. 5717.04. *Wheeling Steel
Corp.* v. *Evatt, supra.* Essentially, Alcoa maintains that
the board's affirmance of the Tax Commissioner's ''302
determination'' of true value of Alcoa's machinery and
equipment in Cuyahoga County, where Alcoa had present-
ed substantial probative evidence of true value, and the
Tax Commissioner did not introduce any evidence as to
the true value in money of Alcoa's machinery and equip-
ment, was erroneous, unlawful and unreasonable.[1]

---

[1]Alcoa, in its brief submitted to this court, listed four propositions
of law as follows:

(I) "The ultimate goal of the trier of fact in reviewing a personal
property tax assessment is to determine the true value in money of the
property * * * and an assessment based solely on an arbitrary percent
of cost as a means of determining value is invalid without specific statu-
tory authority * * *."

(II) "The prima facie presumption of true value accorded the
valuation arrived at by use of the Tax Commissioner's 302 computation
disappears when competent appraisal evidence of true value in money
is introduced, and it is not necessary to prove special or unusual circum-
stances to overcome that presumption * * *."

(III) "In the absence of an actual sale, the true value in money of
tangible personal property is the amount, which may be established by
an appraisal, for which the property would sell on the open market

R. C. 5709.01 authorizes the taxation of personal property "used in business." That section states, in pertinent part:

"* * * All personal property located and used in business in this state * * * [is] subject to taxation * * *."

R C. 5711.18 sets forth the manner in which personal property used in business shall be listed and valued as follows:

"* * * In the case of personal property used in business, the book value thereof less book depreciation at such time shall be listed, and such depreciated book value shall be taken as the true value of such property, unless the assessor finds that such depreciated book value is greater or less than the true value of such property in money. * * *"

Thus, the specific language of this section provides that the depreciated book value is the true value unless the Tax Commissioner finds otherwise. *Youngstown Sheet & Tube Co.* v. *Kosydar* (1975), 44 Ohio St. 2d 96. In the instant cause, through application of the "302 computation" utilizing a 6-2/3 percent allowance, rather than the 7½ percent allowance used by Alcoa, the Tax Commissioner determined that Alcoa's depreciated book values returned for the tax years 1970 and 1971 were less than the true value of its equipment and machinery for those years.

This court has recognized the *prima facie* quality of a determination of the true value of property "used in business" ascertained by the Tax Commissioner through the application of his "302 computation." *Wheeling Steel Corp* v. *Evatt, supra* (143 Ohio St. 71); *W. L. Harper Co.* v. *Peck* (1954), 161 Ohio St. 300; *Adams* v. *Bowers* (1958),

---

between one who is willing to sell, but not compelled to do so, and one who is willing to buy, but not compelled to do so * * *."

(IV) "No claim in writing need be made for a deduction from return value to depreciated book value * * * and when the Tax Commissioner opens the issue of valuation by making an assessment based thereon, the requirement that the taxpayer file a claim in writing for reduction from book value is waived * * *."

167 Ohio St. 389; *Gahanna Heights, Inc.*, v. *Porterfield* (1968), 15 Ohio St. 2d 189; *Syro Steel Co. v. Kosydar* (1973), 34 Ohio St. 2d 9. In *W. L. Harper Co.* v. *Peck, supra*, with reference to the "302 computation" directive, this court explicitly defined the scope of the board's inquiry, at pages 305 and 306:

"We are fully in accord with the use of a directive in the ascertainment of the true value of personal property, but in our opinion the Board of Tax Appeals is required to ascertain from the evidence before it whether in a particular case the application of such a directive will produce an unreasonable result.

"* * *

"Our conclusion is that it is proper to ascertain the true value * * * by the use of proper directives, but that such directives must be applied so that they are subject to adjustment not only in the case of special or unusual circumstances or conditions of use * * * but also to adjustment in all cases where the evidence shows that a rigid application will result in injustice."

However, this court has consistently recognized that "[t]he burden is on the taxpayer to show that the rate of depreciation arrived at under the '302 Computation Directive' does not reflect the true value of its personal property." *Gahanna Heights, supra*, at page 190. See, also, *Adams, supra, Syro Steel, supra*, and *Commonwealth Plan, Inc., v. Kosydar* (1976), 47 Ohio St. 2d 39. Moreover, this burden can only be met if the taxpayer introduces competent evidence of probative value of the personal property's true value in money. *Wheeling Steel, supra; Gahanna Heights, supra; Syro Steel, supra;* and *Adams, supra.*

Thus, the proper scope of this court's review of the board's decision in the instant cause is not a substitution of the board's judgment on factual issues, but to determine from the record if the board's decision is supported by any probative evidence.

Alcoa contends that it introduced competent probative evidence of the true value in money of its equipment

and machinery through two alternative appraisals—one on an "as is—where is" basis and the other on an "in-place" basis.[2] Relying upon *Grabler Mfg. Co.* v. *Kosydar* (1975), 43 Ohio St. 2d 75, wherein this court stated in the syllabus, "[f]or personal property tax purposes, the best method of determining value is the actual sale of such property on the open market and at arms length, between one who is willing to sell, but not compelled to do so, and one who is willing to buy, but is not compelled to do so," Alcoa argues that either one of its two appraisals established the amount for which its equipment and machinery would sell on the open market and at an arm's length sale between a willing buyer and a willing seller and thus that the only evidence of true value presented to the board was Alcoa's appraisals.

It is apparent from the board's decision that it considered both of Alcoa's appraisals, but rejected both as competent, probative true value of Alcoa's equipment and machinery. Relevant to our review of the board's dismissal of the appraisals as probative evidence are the following principles enunciated by this court in paragraphs two, three and four of the syllabus in *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13:

"2. The Board of Tax Appeals is not required to adopt the valuation fixed by any expert or witness. (*Hibschman* v. *Bd. of Tax Appeals*, 142 Ohio St. 47; *Benedict* v. *Bd. of Revision*, 170 Ohio St. 62; *Shaker Square Co.* v. *Bd. of Revision*, 170 Ohio St. 369, approved and followed.)

---

[2]Mr. Sigler, supervisor of the employees from Manufacturer's Appraisal Company, stated that an "as is—where is" appraisal is based on what a willing buyer would pay a willing seller, neither being under any compulsion to buy or sell, in a sale conducted in an orderly manner, for a piece of equipment exactly as it sits, with no warranties or guarantees implied, with the buyer assuming all cost of removal and that the buyer would be the ultimate user.

He further explained that the difference in valuation between the "as is—where is" appraisal and the "in-place" appraisal is that in the "in-place" appraisal the value of the equipment includes the cost of freight and installation.

"3. The Board of Tax Appeals is vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board. (*American Steel & Wire Co. of New Jersey* v. *Bd. of Revision*, 139 Ohio St. 388; *Shaker Square Co.* v. *Bd. of Revision*, 170 Ohio St. 369; *Benedict* v. *Bd. of Revision*, 170 Ohio St. 62, approved and followed.)

"4. The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless its affirmatively appears from the record that such decision is unreasonable or unlawful. (*Bd. of Revision* v. *Fodor*, 15 Ohio St. 2d 52, approved and followed.)"

Heedful of these principles, we find that the board's decision with respect to its rejection of the appraisals as probative evidence of the true value was reasonable and lawful. The board properly determined that the "as is—where is" method used by Mr. Jerome M. Sigler (Alcoa's appraiser) attempts to avoid many parts of *all* the personal property by removing the equipment and deleting the cost of installation, freight, taxes, etc. See *Wheeling Steel, supra; State, ex rel. Aud. of State,* v. *Halliday* (1899), 61 Ohio St. 352; *Gruen Watch Co.* v. *Evatt* (1944), 143 Ohio St. 461; *Marc Lance Ford, Inc.,* v. *Porterfield* (1969), 18 Ohio St. 2d 219; *Twyman Films* v. *Lindley* (1978), 54 Ohio St. 2d 176. Rejection of the "in-place" appraisal which included the freight cost, taxes, installation costs, etc., was based upon the board's finding that this appraisal ignored the actual cost of these expenses, but instead added the appraiser's estimations of value for freight, wiring, etc. Moreover, as noted by the Tax Commissioner in his brief, the appraisals stated an opinion of the value of Alcoa's equipment and machinery as of December 31, 1971.

To arrive at the value as of the tax listing dates, December 31, 1969, and December 31, 1970, respectively, a

"roll-back" was utilized. Simply phrased, this means that the December 31, 1970, value was arrived at by subtracting the "appraised values" of the 1971 additions from the December 31, 1971, value and adding to that remainder the "appraised value" of the disposals in 1970. Thus, the actual values of these sales and purchases were not used as the fair market value. Certainly, this inherent failure of the appraisals to utilize Alcoa's recent sales and purchases as the true value of this equipment and machinery demonstrates at least one reason that the board's refusal to accept Alcoa's appraisals as competent evidence was not unreasonable nor unlawful. *Grabler Mfg. Co., supra* (43 Ohio St. 2d 75); *Conalco* v. *Bd. of Revision* (1977), 50 Ohio St. 2d 129; *Conalco* v. *Bd. of Revision* (1978), 54 Ohio St. 2d 330.

We will not enter into an in-depth analysis of these appraisals, because of the principles previously stated, that the board need not accept the valuation fixed by experts and that the determination of the fair market value of property for the purpose of taxation is a question of fact primarily within the province of the taxing authorities. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision, supra* (44 Ohio St. 2d 13).

The board additionally found that the Tax Commissioner's assessment was not supported merely because Alcoa failed to meet its burden of proof, but that the Tax Commissioner presented evidence, constituting an analysis of Alcoa's records of machinery and disposals, which substantiated the true value determination upon which the assessment was based. The disposal records were the cost schedules prepared and submitted by Alcoa as part of its property tax returns for the years 1966-1967. The disposal records revealed in the instant cause that the machinery and equipment had an estimated life of 23 years, whereas in the assessment at issue the Tax Commissioner utilized a 6-2/3 percent annual allowance, demonstrating that he expected the property to last only 14.9 years when purchased. The significance of equipment disposal records

in verifying true value determination has been recogniz-
ed not only by the board in its previous decisions but by
this court in *Vroman Ice Cream Co.* v. *Porterfield* (1969),
21 Ohio St. 2d 1, and *Vroman Ice Cream Co.* v. *Porterfield*
(1971), 26 Ohio St. 2d 157, wherein this court refused to
disturb the board's finding after the taxpayers' disposal
records were considered by the board in arriving at its
determination of true value.

Accordingly, this court finds that, upon a perusal of
the record *sub judice*, the decision of the board in affirming
the Tax Commissioner's determination of true value re-
turned for Alcoa's machinery and business for 1970 and
1971 is neither unreasonable nor unlawful, and it is, there-
fore, affirmed.

*Decision affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN,
SWEENEY and LOCHER, JJ., concur.

P. BROWN, J., dissents.

